C. H. ABERNATHY, Plaintiff in Error,

v.

B. GOEBEL, Defendant in Error.

C. H. ABERNATHY and Aerial Applications, Inc., Plaintiffs in Error,

v.

B. GOEBEL, Defendant in Error.

Nos. 41158, 41159.

Supreme Court of Oklahoma.

May 2, 1967.

Rehearing Denied July 11, 1967.

Pierce, Mock, Duncan, Couch & Hendrickson, by John R. Couch, Oklahoma City, for plaintiff in error, C. H. Abernathy.

Looney, Watts, Looney, Nichols & Johnson, by Clyde J. Watts, Oklahoma City, for plaintiff in error, Aerial Applications, Inc.

Paul W. Reed, Jr., T. H. Ottesen, Sulphur, Sam J. Goodwin, Pauls Valley, for defendant in error.

IRWIN, Vice Chief Justice.

Plaintiffs in error, the defendants below filed separate appeals and the same were docketed No. 41,158 and No. 41,159 in this Court. The two appeals were consolidated for disposition under No. 41,158. Parties will be referred to as they appeared in the trial court.

Plaintiff brought an action to recover damages to his cotton crop allegedly caused by the spraying of chemicals from airplanes operated by the defendant Aerial Applications, Inc., while said defendant was spraying lands adjacent to the lands of the plaintiff owned by the defendant C. H. Abernathy.

The case was tried before a jury. Plaintiff and defendants moved for instructed verdicts and the same were overruled by the trial court. The jury returned a unanimous verdict in favor of both defendants and judgment was rendered accordingly. Plaintiff filed a motion for a new trial and a new trial was granted. Defendants have appealed from the trial court's order.

Defendants contend the trial court erred in granting a new trial since the unanimous verdict of the jury is supported by competent evidence that defendants were not responsible for the damage to plaintiff's cotton crop.

No request for special instructions were filed and there were no exceptions to the instructions. The specifications of error alleged in plaintiff's motion for a new trial challenge the sufficiency of the evidence to sustain a verdict for defendants and the parties' briefs go to the sufficiency of the evidence. We will therefore first determine whether or not the verdict and judgment in favor of defendants are supported by sufficient competent evidence.

Summarized, the evidence is as follows:

During the month of May, 1962, the defendant Aerial Applications entered into a contract with the defendant Abernathy to spray his ranch. Airplanes owned by Aerial flew over the Abernathy ranch and sprayed the grass, weeds and underbrush with a herbicide compound known as 2,4–D amine salt. The purpose of the spraying was to kill the weeds, underbrush and other broad leaf plants growing in the pasture. Plaintiff's cotton lands were adjacent to pasture lands sprayed.

Plaintiff offered the testimony of a county agent, an inspector for the Oklahoma State Department of Agriculture, and an entomologist. These experts examined the growing cotton on plaintiff's farm during the month of July, 1962. They each testified that the cotton in different parts of the field showed damage from a hormone type herbicide known as 2,4–D or 2,4,10 or 5–D. The County Agent testified that the herbicide used in a limited amount might be helpful to some kinds of plants but "to broadleaves it is dangerous and cotton is one of these that just has to smell it."

Plaintiff offered in evidence a bulletin issued by Louisiana State University entitled "Injuries to Cotton By 2,4–D." The bulletin recited the results of many experiments all establishing that the application of 2,4–D, even in limited amounts, to cotton at any stage of its growing causes severe damage to the cotton.

In addition to his own testimony and the testimony of his experts plaintiff offered the testimony of thirteen farmers and neighbors. Nine of these witnesses testified that they saw planes flying from the Abernathy place across plaintiff's farm. Four testified that they observed smoke or vapor being expelled from the planes as they flew over plaintiff's farm. One farmer and his wife testified that they were outdoors milking and the vapor burned their faces and eyes and it was necessary for them to go in the house and wash their faces and eyes before continuing with their milking. These planes were not definitely identified as belonging to the defendant Aerial Applications.

One witness testified that plaintiff's cotton was about 12 to 18 inches high two or three weeks after the spraying but the leaves were yellow and curled up. Several witnesses testified that the leaves on plaintiff's cotton were curled up.

The evidence is undisputed that 1962 was a bad year for cotton farmers in Oklahoma and the average yield of cotton was less in 1962 than in 1961 and 1960. Defendant offered evidence that plaintiff's yield per acre in 1962 was greater than that of other cotton farmers in the same territory. Plaintiff explained that his yield was greater because he received more rainful but maintained that if his cotton had not been damaged by the spraying he would have secured even a greater yield.

Defendants contend that plaintiff's cotton had not grown to sufficient height to be damaged by the spraying operations of the defendant. The last spraying done by the defendant occurred on May 23, 1962. The pilot operating defendant's spraying plane testified that other parties were operating spraying planes in the area.

Frank Vinson, area inspector for the Oklahoma State Department of Agriculture, an expert witness offered by the plaintiff, testified on cross-examination that it was his conclusion, that " * * * from inspecting these plants from July 10th, that the damage to the top without damage to the bottom indicated that the herbicide application must have been applied after May 23, 1962," and that he so advised the plaintiff Goebel.

Vinson related a conversation which occurred on July 18, 1962, between the plaintiff Goebel and Threadgill, a pilot for Aerial Applications, Inc. In substance Threadgill told Goebel that due to the date of plaintiff's planting and the last day of spraying being May 23rd, it would be impossible for the defendant to be implicated; that Goebel said that he agreed with Threadgill to a certain extent but further said, "I believe I'll have to hold you in this case, at

least, until I talk to an attorney". Later Goebel said, "Now that it's late as it is, I hardly see how it could be responsible but I'll still contend that I need to hold you." This conversation was confirmed by Threadgill.

Threadgill testified that the last spraying was done on May 23, 1962; that calm days were selected for the spraying operations and the plane was flown about 3 to 5 feet above the ground causing the chemical sprayed to fall directly on the ground with little or no drifting; that when the boundary lines of the Abernathy pasture being sprayed were reached the jets releasing the chemical were closed and none of the chemical was being released when the plane was flying over plaintiff's farm.

Clyde Bower, Director of the Division of Entomology and Plant Industry for the Oklahoma Department of Agriculture, testified as an expert witness for the plaintiff. On cross-examination he testified as follows:

"Q. Now, did you understand that when you looked at this cotton on the 11th of July, that it had been planted along the latter part of May?

"A. I was told that, yes, sir.

"Q. And didn't you understand that in the last application of the herbicide from the aerial spray was on the 23rd of May, 1962?

"A. I was told that, yes.

"Q. And from those facts and your observation of the plants, what was your conclusion as to whether the effects you observed on those plants came from the aerial spray on May 23, 1962?

"A. It was my opinion that the effect that I saw on the plants could not have resulted from an application of herbicide on May 23rd.

"Q. All right, sir. Now, you tell the Jury in your own words just what you based that opinion on.

"A. The opinion is based on the fact of the observations of the leaf charac-teristics in the upper portion of the plant. Had the plant been affected at an earlier date, when it was much smaller, the effects would have been noticeable and readily apparent in those areas. The plants were something like one and one-half feet, eighteen to twenty inches high, and with the evidence in the upper portion of the plant, and not in the lower portion, was where I arrived at my decision regarding how they recover, how they grow, and how they develop after they are hit by the herbicide.

"Q. You understand there were other applications of herbicide to the foliage in that general area, after May 23, 1962?

"A. Yes."

The evidence is in conflict concerning the liability of defendants for the damage, if any, to plaintiff's cotton crop. No request was filed by any of the parties for special instructions and no exceptions were taken to the instructions given. In our opinion, there was sufficient competent evidence supporting the verdict of the jury and the judgment rendered thereon.

■ ■ In Cosmo Construction Co. v. Loden, Okl., 352 P.2d 910, this Court said:

"It is self-evident that if a trial court has the unbridled prerogative to substitute its opinion for that of a jury, it would be tantamount to a partial abrogation of the right to trial by jury and the right of appeal. 12 O.S.1951 § 556; Aldridge v. Patterson, Okl., 276 P.2d 202; Harley v. Damron, 104 Okl. 143, 230 P. 507."

In Neely v. Morris, Okl., 333 P.2d 391, we held:

"It is error for the trial court to grant a new trial upon the ground that he cannot conscientiously agree with the verdict of the jury, where negligence and contributory negligence are alleged and supported by competent evidence for the reason that these issues are for the jury to decide and

the court cannot substitute his opinion for that of the jury."

We also held in Hanna v. Parrish, Okl., 344 P.2d 658, quoted with approval in Cosmo Construction Co. v. Loden, supra, that:

" 'Where it is determined that trial court acted arbitrarily, clearly abused its discretion, or erred on some unmixed question of law in granting new trial, order granting new trial will be reversed.' "

The probative value of the conflicting evidence was solely a question for the jury to determine. It resolved this question in favor of defendants. It was not the prerogative of the trial court to substitute its opinion for that of the jury.

The order sustaining plaintiff's motion for a new trial is vacated with directions to re-instate the judgment in favor of defendants and overrule plaintiff's motion for a new trial.

Order sustaining motion for new trial vacated with directions.

All the Justices concur.